The Honorable Lonnie P. Clark State Representative P.O. Box 307 Berryville, AR 72616
Dear Representative Clark:
This is in response to your request for an opinion on the following questions:
 1. Is it legally acceptable for a taxpayer to make a partial payment on delinquent taxes, rather than having to pay the entire balance due at one time?
 2. It is legally acceptable for the county to distribute delinquent taxes on a monthly basis rather than a quarterly basis. (Our school district needs the money as soon as possible to meet obligations.)
 3. Regarding Act 581 of 1989, will fringe benefits be considered as part of the $16,000 required base pay for teachers? (Example: $15, 500 per salary schedule, plus $500 for Blue Cross-Blue Shield.)
With regard to your first question, research fails to yield any provision for partial payment of delinquent taxes. Indeed, as to delinquent taxes due on real estate, A.C.A. 26-37-302 (Supp. 1989) states:
 (a) In order to redeem, whether with the county collector or the Commissioner of State Lands, and in order to purchase at the Commissioner's sale, the redeemer/purchaser of tax-delinquent land shall pay all delinquent taxes, plus:
 (1) Ten percent (10%) simple interest for each year of delinquency;
(2) A ten percent (19%) penalty for each year of delinquency; and
 (3) The costs incurred by the county and the Commissioner of State Funds.
 (b) The penalties and interest shall accrue beginning on October 11 of the year of delinquency. [Emphasis added.]
Thus, "all delinquent taxes" must be paid by the delinquent taxpayer who seeks to redeem delinquent real property. Partial payment does not appear to be an option.[1]
The answer to your second question is, in my opinion, "no" with regard to amounts received from land redemptions. This conclusion is compelled by the language of A.C.A. 26-39-407, which states:
 (a) The county clerk shall, within ten (10) days after the end of each quarter year, recapitulate and make proper distribution of all taxes, penalties, and costs collected on state lands which were redeemed during the preceding quarter and shall certify to the county treasurer the penalties, and costs collected. The clerk shall send a certified copy of the amount due the state to the Auditor of State.
 (b) The county treasurer, upon receipt of the certificate, shall credit each fund with the amounts shown on the certificate and shall, within five (5) days after the receipt of the clerk's certificate, remit to the State Treasurer and other agencies the amounts received during the preceding quarter due the various funds.
 (c) This section shall not apply to counties required by law to distribute taxes derived from land redemptions more often than quarterly.[2]
It is thus apparent that taxes, penalties and costs received from land redemptions are to be distributed quarterly.
The above Code Section 26-39-407 does not appear to encompass delinquent personal property tax payments. These funds are, presumably, governed by A.C.A. 26-39-201 which provides for the monthly distribution of ninety percent of the collector's advance payments prior to the final settlement. (Adjustments are then made, and the balance remaining in the unapportioned account is distributed upon order of the county court approving the final settlement of the collector. A.C.A. 26-39-201(b)(2)).
It is my opinion that the answer to your third question is, generally, "no". Act 581 of 1989, as codified at A.C.A. 6-17-1001
(Supp. 1989), states:
 (a) In school year 1990-91 and each school year thereafter, no school district shall pay its teachers less than sixteen thousand dollars ($16,000) per school year, which shall be the minimum base salary.
 (b) In school year 1991-92 and each school year thereafter, school districts shall pay teachers with a master's degree and no experience at least one hundred and fifteen percent (115%) of the minimum base salary prescribed in subsection (a) of this section.
The purpose of Act 581, as expressed in its title, is "to establish minimum salaries for teachers." The act thus focuses on the amount to be paid teachers as a minimum salary. As a general matter, salaries and fringe benefits are distinguishable. This fact is reflected in several legislative enactments pertaining to teachers' salaries and school finances. See, e.g., A.C.A. 6-20-307(f) (Supp. 1989) (expenditures included in the 70% of net current reserve requirement "shall include salaries . . . and other payments that are recognized as fringe benefits to certified personnel); see also A.C.A. 6-17-908.
While it is therefore my opinion that fringe benefits are not considered as salaries, per se, and thus should generally not be considered as part of the required base pay under 6-17-1001 (Supp. 1989), it should be noted that the legislature has authorized the payment of fringe benefits from funds earmarked or allocated for teacher salaries. Under A.C.A. 6-17-908, a majority of the teachers in a district may approve the payment of "insurance or other fringe benefits" from the teachers' salary fund. A.C.A.6-17-908(a). If funds earmarked for salaries are used to pay fringe benefits, one might contend that such benefits should be included in the minimum base salary calculation under 6-17-908(a). If funds earmarked for salaries are used to pay fringe benefits, one might contend that such benefits should be included in the minimum base salary calculation under 6-17-1001 (Supp. 1989). The fringe benefits are, in that instance, an expenditure from the salary fund. Although they are not considered as salaries per se, they are paid from the salary fund. As such, they may be counted toward meeting the 56% (80% of 70%) requirement pertaining to increases in net current revenue. See A.C.A. 6-20-319(4)(A) (Supp. 1989). It is my opinion that, while the law is not clear on this point, a good argument could be made that such fringe benefits should be considered as part of the minimum base salary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] The initial payment of both real and personal property taxes may, however, be in installments. See A.C.A. 26-35-501
(Supp. 1989). There appears, similarly, to be no provision for the partial payment of delinquent personal property taxes. As a general matter, therefore, it must be concluded that the collector may refuse to accept partial payment on delinquent taxes.
[2] Correspondence attached to your request indicates that your questions pertain to Clebourne County. We have found no provision requiring such a distribution by Clebourne County more often than quarterly. Prior to the enactment of 26-39-407, Act 275 of 1933, 23, provided for the monthly distribution of funds received from land redemptions. This act has been repealed in part and superseded in part.